

RECEIVED
IN LAKE CHARLES, LA

MAR 24 2011

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| BOYD RACING, L.L.C. | DOCKET NO. 2:10 CV416 |
|---|---|
| VS. | JUDGE MINALDI |
| W.G. YATES & SONS CONSTRUCTION CO.; BMS CATASTROPHE, INC.; and DEHUMIDIFICATION TECHNOLOGY GP, L.L.C. | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the Court are two Motions for Summary Judgment [Docs. 20 & 22], filed by the defendant Dehumidification Technology GP, L.L.C. ("DT") [Doc. 20] as well as the defendants BMS Catastrophe, Inc. ("BMS") and W.G. Yates & Sons Construction Co. ("Yates") [Doc. 22]. The plaintiff, Boyd Racing, L.L.C. ("Delta Downs"), filed an Opposition [Doc. 24]. Jean Moriarty, the plaintiff-in-intervention, also filed an Opposition [Doc. 25]. The defendants filed their respective Reply Memorandums [Docs. 26 & 30].

## BACKGROUND

Hurricane Ike damaged Delta Downs' Casino and Hotel in September 2008.[1] Delta Downs retained Yates to perform the required repairs. In relevant part, the contractor-hiring-process involved three-steps. First, Delta Downs hired Yates to repair the facility. Next, Yates hired BMS to remove water and provide dehumidification services at the casino and hotel. BMS, in turn, subcontracted dehumidification services to DT.[2]

---

[1] Compl. ¶ II [Doc. 1-2].

[2] Defs.' Statement of Uncontested Material Facts ¶¶ 2-3 [Doc. 22-1].

1

In providing dehumidification services vis-à-vis its contract with BMS, DT placed temporary dehumidification duct work throughout the facility.[3] The placement of the duct work, specifically its tubing, varied. Some tubes were elevated; some tubes ran along the floor; and some tubes were placed on top of chairs or tables. The diameter and circumference of tubing also allegedly varied, though Ms. Moriarty only encountered tubing that "looked the same size."[4]

During this dehumidification process, Delta Downs asked some of its employees, including Ms. Moriarty, to return to the facility to help facilitate its re-opening. During the re-opening process, Ms. Moriarty successfully crossed the duct work on five of the six occasions that she encountered it during her work day.[5] On the sixth occasion, however, Ms. Moriarty allegedly tripped over the duct work and fell onto her knee and left arm. As a result, she has required, and continues to undergo, medical treatment.[6]

Ms. Moriarty made a claim against Delta Downs for Workers' Compensation benefits arising out of that injury. Accordingly, Delta Downs has paid benefits and medical expenses to Ms. Moriarty under Louisiana's Workman's Compensation statute. Pursuant to Louisiana Revised Statute 23:1101, et seq., Delta Downs filed this lawsuit, seeking reimbursement for past and future compensation and medical benefits from the defendants, asserting claims of

---

[3] *Id.* at ¶ 4; Compl. ¶ III [Doc. 1-2].

[4] Pl.'s Opp'n., Ex. 3, Decl. of Travis Walters, ¶ 4 [Doc. 24-2]; Def.'s Mem. in Supp. of Mot. for Summ. J., Ex. C, Dep. of Jean Moriarty, 119 [Doc. 20-3].

[5] Def.'s Mem. in Supp. of Mot. for Summ. J., Ex. C., Dep. of Jean Moriarty, 117-119 [Doc. 20-3].

[6] Compl. ¶ IV [Doc. 1-2].

negligence, against all the defendants, and breach of contract, against Yates.[7] In November, the defendants filed their respective Motions for Summary Judgment.

In their Motions for Summary Judgment, the defendants claim that there is no duty to protect against an open and obvious hazard. Accordingly, because the defect was open and obvious, Delta Downs and Ms. Moriarty will be unable to meet their burden of proof on an essential element of their claim: that the defendants owed a duty to Ms. Moriarty.[8] Delta Downs and Ms. Moriarty respond by asserting, in part, that the obviousness of the defect is only one factor to consider in determining whether a duty exists.[9] The defendants assert that the alleged defect was not unsafe. In other words, they assert that the tubing did not present an unreasonable risk of harm.[10] The plaintiffs essentially argue that a material fact still exists as to whether the tubing presented an unreasonable risk of harm.[11]

---

[7] *Id.* ¶¶ V-VII.

[8] Def.'s Mem. in Supp. of Mot. for Summ. J. 5 [Doc. 20-2] ("Movant disputes that the subject tubing was a hazard; however, even if the tubing were considered a hazard, as alleged by Plaintiff and Intervenor, applicable law precludes recovery; for, it is well-settled Louisiana law that defendants have **no duty to protect against an open and obvious hazard**.") (emphasis in original); Def.'s Mem. in Supp. of Mot. for Summ. J. 2 [Doc. 22-2] (raising the exact same argument as DT). BMS and Yates also object to some of Delta Downs' deficient summary judgment evidence. That issue, however, is inconsequential, and thus not considered, based on the reasons stated *infra*.

[9] Pl.'s Opp'n 5 [Doc. 24].

[10] *See* Def.'s Reply [Doc. 26].

[11] *See* Pl.'s Opp'n [Doc. 24]. Of note, the defendants also object to a large portion of the plaintiff and intervenor's summary judgment evidence. *See* Def.'s Reply [Doc. 30]. Rule 56(e) of the Federal Rules of Civil Procedure provides that when affidavits are used to support or oppose a summary judgment motion, they "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify to the matters stated." For example, business records, such as contracts, are admissible as summary judgment evidence so long as these documents are properly authenticated and otherwise admissible. *See, e.g., Marshall v. Norwood*, 741 F.2d 761 (5th Cir. 1984) (finding inmate's prison conduct record admissible for summary judgment purposes when (1) the prison record was a certified copy, (2)

3

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The party moving for summary judgment is initially responsible for demonstrating the reasons justifying the motion for summary judgment by identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact for trial. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). If the dispositive issue is one that the nonmoving party will bear the burden of proof at trial, the moving party may satisfy this burden by merely pointing out that the record contains insufficient evidence concerning an essential element of the nonmoving party's claim. *Celotex*, 477 U.S. at 325. "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting *Celotex*, 477 U.S. at 323).

---

the prison record was referred to in the prison official's affidavit, and (3) the prison record was submitted as an exhibit to the official's summary judgment motion); *see also Woods v. City of Chicago*, 234 F.3d 979 (7th Cir. 2000) ("Sworn testimony is not the only basis on which summary judgment may be granted; rather, the court may consider any material that would be admissible or usable at trial, including properly authenticated and admissible documents or exhibits" (internal citations omitted)), *cert. denied*, 534 U.S. 955 (2000). Likewise, Rule 56(e) requires parties to present facts, as opposed to opinions or beliefs, and these facts must be based on personal knowledge. *See, e.g., BMG Music v. Martinez*, 74 F.3d 87, 90 n. 18 (5th Cir. 1996). In addition, the "nonmovant cannot defeat a motion for summary judgment by submitting an affidavit which directly contradicts, without explanation, his previous testimony." While these evidentiary requirements are mandatory, non-compliant evidence may be considered if a party fails to object. *See U.S. v. "Monkey,"* 725 F.2d 1007, 1011, n. 4 (5th Cir. 1984); 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 2738 (3d ed. 2007). Thus, the defendants' objection is sustained. Only the plaintiff and intervenor's admissible summary judgment evidence is considered.

If the movant satisfies this burden, however, then the nonmovant must "designate specific facts showing that there is a genuine issue for trial." *Tubacex,* 45 F.3d at 954. The nonmovant may not rest upon the pleadings. *See Celotex,* 477 U.S. at 325. In evaluating motions for summary judgment, the court must consider all of the evidence in the record and view all facts in the light most favorable to the nonmoving party. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.,* 530 F.3d 395, 399 (5th Cir. 2008); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). Summary judgment is warranted when the record as a whole "could not lead a rational finder of fact to find for the non-moving party." *Delta & Pine,* 530 F.3d at 399.

## LAW & ANALYSIS

Delta Downs and Ms. Moriarty apparently premise liability on both Louisiana Civil Code article 2317.1, which imposes legal fault of an owner or custodian of a thing for damage caused by its ruin, vice, or defect, and/or articles 2315 and 2316, Louisiana's negligence statute.[12] La. Civ. Code arts. 2317.1, 2315, & 2316 (West 2010). Originally, article 2317 imposed strict liability against one with custody, or *garde,* of a thing. The 1996 Rule amendment, however, added article 2317.1, injecting a negligence standard into custodial fault.[13] Under both theories

---

[12] *See* Compl. [Doc. 1-2]. For purposes of their Motions for Summary Judgment, the defendants apparently concede that they are custodians or owners of the allegedly dangerous thing. Def.'s Mem. in Supp. of Mot. for Summ. J. 5 [Doc. 20-2]; Def.'s Mem. in Supp. of Mot. for Summ. J. 2 [Doc. 22-2]

[13] Article 2317.1 read in conjunction with article 2317 forms an oddly constructed cause of action. A claimant injured by a thing must first satisfy article 2317 by proving that: (1) the thing was in the owner or custodian's garde; (2) the thing contained a vice or defect creating an unreasonable risk of harm; and (3) the damage was caused by the vice or defect. Next, the claimant must satisfy article 2317.1's requirements, namely that: (1) the owner of a thing either knew or should have known of the of the ruin, vice or defect which caused the damage; (2) the owner could have prevented the damage through the exercise of reasonable care; and (3) the owner failed to exercise reasonable care. Since the 1996 amendment, the Louisiana Supreme Court has analyzed Article 2317 under the duty/risk analysis.

5

of liability (i.e., articles 2317 and 2315), the plaintiff must prove that the condition of the thing presented an unreasonable risk of harm, and that this condition of the thing was the cause-in-fact of the plaintiff's injuries. *See, e.g., McCloud v. Housing Authority of New Orleans*, 08-0094, p. 3 (La. App. 4 Cir. 6/11/08); 987 So. 2d 360, 362. Consequently, both theories are analyzed using Louisiana's formula for negligence: the duty/risk analysis. *Id.*

The Louisiana Supreme Court has set forth four questions to assist courts in "determining the responsibilities of the parties" under the duty/risk analysis:

(1) Was the conduct in question a cause-in-fact of the resulting harm?

(2) What, if any, duties were owed by the respective parties?

(3) Were the requisite duties breached?

(4) Was the risk, and harm caused, within the scope of protection afforded by the duty breached?

*Socorro v. City of New Orleans*, 579 So.2d 931, 938-39 (La. 1991). If the plaintiffs fail to satisfy one of the elements, then the defendants are not liable. *Id.* Accordingly, the issue raised in the defendants' Summary Judgment Motions is narrow, implicating only the second question: whether the defendants owe a duty to discover and correct an alleged unreasonably dangerous condition that is open and obvious. In Louisiana, the existence of a duty and its scope are questions of law that are determined according to the facts and circumstances of the particular case. *Dupre v. Chevron U.S.A., Inc.*, 20 F.3d 154, 157 (5th Cir. 1994); *see McLachlan v. New York Life Ins. Co.*, 488 F.3d 624, 628 (5th Cir. 2007).

Turning to the argument raised by the defendants, this Court holds that the obviousness of the allegedly dangerous condition is only one factor in the duty analysis. While "defendants *generally* have no duty to protect against an open and obvious hazard," *Eisenhardt v. Snook*, 08-

6

1287, p. 6 (La. 3/7/09); 8 So. 3d 541, 544 (emphasis added), the defendants are incorrect in their contention that if a defect is obvious, they owe no duty to the plaintiff. *See, e.g., Adams v. Chevron USA, Inc.*, 383 Fed. Appx. 447, 453-54 (5th Cir. 2010). In fact, the Louisiana Supreme Court has explicitly rejected such an argument. *See Murray v. Ramada Inns, Inc.*, 521 So. 2d 1123 (La. 1988); *Pitre v. Louisiana Tech University*, 95-1466 (La. 5/10/96); 673 So. 2d 585; *see also Eisenhardt*, 8 So. 3d at 544 ("The degree to which a danger may be observed by a potential victim is one factor in the determination of whether the condition is unreasonably dangerous.")

In *Murray*, for example, the court rejected the defendants' argument that they had no duty to protect against a known hazard. 521 So. 2d at 1135-36. There, an individual sustained fatal injuries after diving into a motel swimming pool. His wife and child brought a wrongful death action against a number of defendants, including the companies that owned and operated the motel. *Id.* at 1123-25. The court first noted that the absolute defenses of assumption of the risk and contributory negligence were no longer viable in Louisiana, as they had been subsumed by comparative fault principles. *Id.* at 1132-33. Then the court rejected the defendants' assertion that they owed no duty to protect against an open and obvious defect, reasoning that:

> If accepted, the defendants' argument would inject the assumption of risk doctrine into duty/risk analysis "through the back door." By that, we mean that the argument attempts to define the defendant's initial duty in terms of the plaintiff's actual knowledge, and thereby seeks to achieve the same result which would be reached if assumption of risk were retained as a defense, i.e., a total bar to the plaintiff's recovery.

*Id.* The court held that the defendants' duty is based not on the obviousness of the defect but on the standard of care that the defendants owe to the injured party. *Id.* Accordingly, just because a defect may be obvious does not necessarily render the defendants without a duty to act prudently to discover and correct that defect.

This, however, is not to say that the obviousness of a defect is irrelevant. To the contrary, whether a risk is open and obvious is still germane to the negligence calculus. *Id.* Louisiana courts, for example, have "consistently held that a landowner [or custodian] owes a plaintiff a duty to discover any *unreasonably* dangerous condition and to either correct the condition or warn of its existence." *Socorro*, 579 So. 2d at 939 (emphasis added). Yet, since "the duty which a landowner owes to persons entering his property is governed by a standard of reasonableness, . . . a potentially dangerous condition that should be obvious to all comers is not, in all instances, *unreasonably* dangerous." *Murray*, 521 So. 2d at 1136 (emphasis added). In that case, the court may find that the defendant did not act unreasonably vis-à-vis the plaintiff. *Id.* Likewise, the plaintiff may have contributed to the injury by encountering an obvious and open danger, thus limiting the amount recoverable under Louisiana's comparative fault principles. *Id.* Thus, while the obviousness of a defect does not in-and-of-itself preclude recovery under the duty/risk analysis, it is relevant to determine (1) the scope of the defendant's duty to a particular plaintiff (e.g., whether the condition is unreasonably dangerous) and (2) the comparative fault of the parties. *See id.*

Having determined that the obviousness of a dangerous condition does not necessarily render the custodians without a duty to correct that defect, this court turns to the question of whether the alleged vice presented an unreasonable risk of harm. To determine whether a particular risk is unreasonable, the court must balance the probability and magnitude of the risk against the utility of the thing. *See, e.g., Pitre*, 673 So. 2d at 591-93. This requires consideration of: "(1) the utility of the complained-of condition; (2) the likelihood and magnitude of the harm, which includes the obviousness and apparentness of the condition; (3) the cost of preventing the harm; and (4) the nature of the plaintiff's activities in terms of its social utility, or whether it is

dangerous by nature." *Dauzat v. Curnest Guillot Logging Inc.*, 08-0528, p. 5 (La. 12/2/08); 995 So. 2d 1184, 1186-87. When the burden of the precautionary activity outweighs the probability and magnitude of the risk, the custodian owes no duty to correct the alleged defect. *See id.*

In *Dauzat v. Curnest Guillot Logging, Inc.*, for example, the Louisiana Supreme Court analyzed the reasonableness factors and found that an open and obvious defect did not present an unreasonable risk of harm, reversing the district court's denial of the landowner-defendant's motion for summary judgment. *Id.* at 1187-88. There, the plaintiff allegedly injured his back after the 18-wheel logging truck he was driving struck a hole in an unpaved logging road. *Id.* at 1185. The plaintiff sued (1) the landowner, (2) the owner of the timber on the land, and (3) the logging company, who was responsible for both cutting and hauling the timber from the land and maintaining the logging roads on the property. *Id.*

The first reasonableness factor favored a finding of no duty, as the unpaved logging road provided the only method for removing harvested timber from the defendant's land. *Id.* After considering the third factor, the court noted that logging roads are temporary. *Id.* As such, the court reasoned that the roads are typically not paved or improved. *Id.* Thus, the court likewise found the third factor favored the landowner-defendant; the cost of preventing the harm would have been unreasonably expensive. *Id.* Similarly, the court found that the fourth factor favored a finding of no duty, as the job of logging is dangerous by nature. *Id.* Ultimately, the court found that the dispute turned on the second factor; that is, "the substantial likelihood and magnitude of injury from the hole, with consideration to whether the hole was apparent or obvious." *Id.*

In analyzing the second factor, the court emphasized that the plaintiff was aware of the condition of the logging road, having traveled over it several times on the day of the accident. *Id.* The court also reasoned that five other truck drivers, who were working on the day of the

accident, never reported any problems with the road. *Id.* Ultimately, the court "conclud[ed] that the presence of the hole in the logging road was an obvious danger which did not create a significant likelihood of injury." *Id.* Accordingly, the court granted the landowner-defendant's motion for summary judgment. *Id.* at 1187-88.

Like the allegedly dangerous condition in *Dauzat*, the alleged defect here was not, as a matter of law, unreasonably dangerous. Both parties admit that the dehumidification tubing has social utility, thus satisfying the first factor. *See id.* at 1187. Likewise, for purposes of the fourth factor, while Ms. Moriarty's job is not typically dangerous, she nevertheless chose to work in a construction zone. In contrast to the duties owed by construction workers to a passerby or visitor, *see McCloud v. Housing Authority of New Orleans*, 2008-0094, pg. 4, 6 (La. App. 4 Cir. 6/11/08); 987 So. 2d 360, 363, 364 ("the plaintiff was not a mere 'passerby' or 'visitor' with no knowledge that a dangerous condition existed."), Ms. Moriarty was not merely an innocent passerby at the time of her accident. Just as the defendants were working to facilitate the reopening of Delta Downs' Casino and Hotel, so too was Ms. Moriary assisting in the reopening process. Thus, like the plaintiff in *Dauzat*, Ms. Moriarty's job on the date of her injury was dangerous: it presented frequent encounters with potential construction hazards. 995 So. 2d at 1187; *see McCloud*, So. 2d at 364.

As to the third factor, the parties dispute the cost of preventing the harm. However, the major defect in Delta Downs' argument is that it improperly focuses on the defendants alleged cost of prevention, arguing that they could pass on that expenditure to Delta Downs. But, the issue of cost must be divorced from the issue of who will ultimately bear that cost. As the court reasoned in *Dauzat*, the focus of the third factor is on the cost of the preventative measure, not

10

the party who is responsible for paying for that measure.[14] 995 So. 2d at 1187. Based on what can be gleaned from the record, there is no indication that the cost was low. To the contrary, the evidence indicates that suspending the allegedly vast amounts of tubing from Delta Downs' ceiling would likely require a significant amount of labor.[15] Nevertheless, even assuming a low cost of prevention, an analysis of the second factor overwhelmingly tips the balance in favor of defendants.

The alleged defect here did not present a significant likelihood of injury. Just as the court emphasized in *Dauzat*, Ms. Moriarty safely crossed the tubing several times on the day of her accident. In fact, Ms. Moriarty admitted that stepping over the tubing was not difficult; "[i]t was a little bit of a step."[16] Moreover, she was unequivocally aware of the tubing and nevertheless chose to encounter it.[17] *Id.*; *see McCloud*, 987 So. 2d at 364. While Mr. Travis Walters, the

---

[14] In *Dauzat*, for example, there was a dispute as to which party was contractually required to maintain the road. 995 So. 2d at 1187. In analyzing the third factor, the court did not consider which party bore the responsibility to maintain the logging road. *Id.* Instead, the court merely considered the cost of the preventative measure. *Id.*

[15] *See, e.g.*, Pl.'s Opp'n, Ex. 3, Unsworn Statement of Travis Walters, ¶ 4 ("dehumidification temporary duct work ran throughout the casino, both on the ground and suspended from the ceilings. It was impossible to walk through the casino without encountering the temporary duct work.")

[16] *See* Def.'s Mem. in Supp. of Mot. for Summ. J., Ex. 4, Dep. of Jean Moriarty, 45:12-18.

[17] *See* Def.'s Mem. in Supp. of Mot. for Summ. J., Ex. 4, Dep. of Jean Moriarty, 31:12-21 ("We all evacuated. [Delta Downs Casino and Hotel] was closed down. . . . I called . . . and told them I was coming back, and then they called me and said, 'We're still closed down, but could you come to work to get Delta Downs ready to reopen,' and that's what I was doing that day at work."). Delta Downs, however, argues that the tubing was unavoidable, but this Court finds the argument unavailing. *See* Pl.'s Opp'n. First, Ms. Moriarty chose to return to work while Delta Downs was under construction. Thus, she chose to encounter any potential construction hazards. Next, Delta Downs admits that some of the tubing was suspended from the ceiling and the tubing "came in various size diameters." *See* Pl.'s Opp'n, Ex. 3, Unsworn Statement of Travis Walters, ¶ 4. Thus, even construing the facts in a light most favorable to Delta Downs, the evidence indicates that Ms. Moriarty could have avoided the tubing by either walking under the tubing that suspended from the ceiling or crossing a smaller tubing. To the extent that Ms. Moriarty could

11

Director of Security for Delta Downs, allegedly spoke with a BMS representative and requested that the tubing be elevated from the ceiling, no other individuals reported any problems. *See Dauzat*, 995 So. 2d at 1187 (noting that none of the truck drivers who were working on the day of the accident reported any problems with the road). Taken as a whole, the evidence indicates that the alleged defect was open and obvious and the tubing did not present an unusual danger, as evidenced by (1) Ms. Moriarty's own statements, (2) Ms. Moriarty safely crossing the tubing on five occasions before her injury, and (3) the lack of reports of problems with the tubing. Under these circumstances, the presence of the tubing did not present a significant likelihood of injury. Accordingly, it is

ORDERED that the defendants' Motions for Summary Judgment [Docs. 20 & 22] are hereby GRANTED.

IT IS FURTHER ORDERED that the plaintiffs' negligence claim is hereby DISMISSED with prejudice, at the plaintiff's and intervenor's cost. Since Delta Downs' additional Breach of Contract claim is premised on allegations that the defendant, Yates, did not provide a safe jobsite, that claim must also be DISMISSED with prejudice, as the complained of condition was not unreasonably dangerous, as a matter of law.

Lake Charles, Louisiana, this 23 day of March 2011.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

---

not have "easily avoided" stepping over the duct work, this evidence is of little value here in considering the likelihood of injury.